**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**SAN ANGELO DIVISION**

| | | |
|---|---|---|
| | § | |
| **ANNE JOSEPH,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **Civil Action No. 6:04-CV-0065-C** |
| | § | **ECF** |
| | § | **Referred to the U.S. Magistrate Judge** |
| **JO ANNE B. BARNHART,** | § | |
| **Commissioner of Social Security,** | § | |
| | § | |
| **Defendant.** | § | |

## REPORT AND RECOMMENDATION

**THIS MATTER** is before the court upon Plaintiff's complaint filed November 9, 2004, for

judicial review of the administrative decision of the Commissioner of Social Security granting

Plaintiff's applications for a closed period of benefits and denying Plaintiff's applications for a

period of disability and disability insurance benefits and for supplemental security income benefits

under Title II and Title XVI of the Social Security Act after June 12, 2001. Plaintiff filed a brief in

support of her complaint on April 22, 2005, Defendant filed her brief on May 23, 2005, and Plaintiff

filed her reply on June 7, 2005. The United States District Judge, pursuant to 28 U.S.C. § 636(b),

referred this matter to the United States Magistrate Judge for report and recommendation, proposed

findings of fact and conclusions of law, and a proposed judgment. This court, having considered

the pleadings, the briefs, and the administrative record, recommends that the United States District

Judge affirm the Commissioner's decision and dismiss the complaint with prejudice.

## I.   STATEMENT OF THE CASE

Plaintiff filed applications for a period of disability and disability insurance benefits and for supplemental security income benefits on April 11, 2001, with a protective filing date of March 29, 2001, alleging disability beginning October 12, 1999. Tr. 14. Plaintiff's applications were denied initially and upon reconsideration. Tr. 14, 61-64. Plaintiff filed a Request for Hearing by Administrative Law Judge on January 11, 2002, and this matter came for hearing before the Administrative Law Judge ("ALJ") on September 27, 2002. Tr. 14, 26-47, 53-54. Plaintiff, who was not represented, testified in her own behalf. Tr. 31-39. Carol Bennett, a vocational expert ("VE"), appeared and testified as well. Tr. 40-41. The ALJ issued a decision partially favorable to Plaintiff on November 12, 2002. Tr. 11-21. The ALJ granted a closed period of disability, commencing March 24, 2000 and ending on June 12, 2001. Tr. 14.

In his opinion the ALJ noted that the specific issue was whether Plaintiff was under a disability within the meaning of the Social Security Act. He found that Plaintiff met the disability insured status requirements on October 12, 1999, through the date of his decision. Tr. 15. The ALJ found that Plaintiff had engaged in substantial gainful activity between October 12, 1999, and March 23, 2000. Tr. 15. The ALJ noted that Plaintiff had returned to work as a part-time choir director in October 2000 and also stated that Plaintiff had returned to work as a library technician in mid-2001, but he found that Plaintiff had not engaged in substantial gainful activity since March 24, 2000, through the date of his decision. *Id.* He found that Plaintiff has "severe" impairments, including mild degenerative changes of the cervical spine, with disc extrusion at C5-6, without neurological deficits; mild degenerative changes of the lumbar spine; and is status post bilateral arthroscopic shoulder procedures. Tr. 16. He further found that Plaintiff's severe impairments, singularly or in combination, were not severe enough to meet or equal in severity any impairment listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpt. P, App. 1. *Id.*

The ALJ noted that a consultative examination yielded no diagnosis for Axis I or Axis II[1] and also noted that Plaintiff definitively denied any depressive or mental symptoms. Tr. 16. The ALJ therefore found that Plaintiff did not have a "severe" mental impairment, citing *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1998) and 20 C.F.R. §§ 404.1521 and 416.921.

The ALJ then turned to Plaintiff's testimony and subjective allegations regarding her symptoms and limitations. Tr. 16-17. The ALJ noted that the medical record substantiates a history of objective findings which could reasonably be expected to produce some of the subjective symptoms alleged. However, the severity of the pain and functional limitations were not reasonably supported by the medical evidence subsequent to June 12, 2001, when the Plaintiff experienced work-related medical improvement. Tr. 17. The ALJ noted that Plaintiff had alleged disability for all times since October 12, 1999, although the record demonstrated work at the level of substantial gainful activity through most of March 2000. *Id.* He also noted that Plaintiff returned to work part-time in October 2000 and had completed approximately one year of her graduate degree work by mid-2001. *Id.* The ALJ found that Plaintiff's ability to perform the job of choir director, even at a part-time level, was indicative of a functional level inconsistent with disability, given that her allegations involve the neck, shoulders, and upper extremities. This job necessarily requires consistent, repetitive use of at least one upper extremity, as well as extensive neck and upper body movement and use. Tr. 17-18. The ALJ also found that Plaintiff's testimony and reports of her activities were inconsistent with disability, including her care, as a single parent, of five school-age children, completing household chores with the assistance of the children, cooking, shopping, taking

---

[1]     The axial system of evaluation enables the clinician to comprehensively and systematically evaluate the mental disorders and general medication conditions, psychosocial and environmental problems, and level of functioning of a person. *See generally, American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) at 25-30. Axis I is used to report all clinical disorders, except for personality disorders and mental retardation, which are reported on Axis II. *Id.*

care of financial matters, riding her stationary bicycle, and engaging in a daily exercise routine. Tr. 18.  The ALJ noted that Plaintiff has repeatedly declined treatment modalities except for physical therapy and heat, after the diagnostic arthroscopy and decompression procedures to the left and right shoulders.  Tr. 16, 18.  He noted that there were no objective findings substantiating the debilitating symptoms complained of subsequent to June 12, 2001, when surgical recovery was well-documented.  *Id*.  He therefore found that Plaintiff's allegations of disability subsequent to June 12, 2001, were exaggerated and inconsistent with the medical evidence of record, the record of treatment, and Plaintiff's reported activities of daily living.  *Id*.  He found that Plaintiff's reports of symptoms and her subjective allegations for the period subsequent to June 12, 2001, were not credible.  Tr. 16.  The ALJ found that her subjective allegations between March 24, 2000, and June 12, 2001, were credible.  *Id*.

The ALJ acknowledged that in making the RFC assessment, he must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with the objective medical evidence and other evidence, based on the requirements of Social Security Ruling 96-7p.  Tr. 19.  He found that between March 24, 2000, and June 12, 2001, her RFC for the full range of sedentary work was reduced due to symptoms commensurate with surgical recovery.  Tr. 18.  The ALJ, therefore, found that for the period of time between March 24, 2000, and June 12, 2001, Plaintiff could not return to her past relevant work.  Tr. 19.

The ALJ further found that as of June 12, 2001, Plaintiff experienced medical improvement related to her ability to work and regained the functional capacity to perform the exertional and nonexertional requirements of light work, limited to jobs which require no lifting over 10 pounds, no overhead use of the upper extremities, and no working with weight with the arms extended.  Tr. 18.  The ALJ noted that Plaintiff was considered a "younger individual" with a college education. Tr. 20.  He relied upon the testimony indicating that Plaintiff's past relevant work as a Chinese

linguist did not require the performance of work-related activities precluded by the RFC finding. Tr. 19. He thus found that subsequent to June 12, 2001, Plaintiff could return to her past relevant work as a Chinese linguist. *Id.*

The ALJ, therefore, concluded that Plaintiff was entitled to a closed period of disability commencing on March 24, 2000, and ending June 12, 2001, and to disability insurance benefits under the Social Security Act and supplemental security income for that period. Tr. 20. The ALJ further found that Plaintiff was not disabled subsequent to June 12, 2001, because she retained the RFC to perform her past relevant work. *Id.*

Plaintiff submitted a Request for Review of Hearing Decision/Order on January 10, 2003. Tr. 5-10. The Appeals Council issued its opinion on August 27, 2004, indicating that although it had considered the contentions raised in Plaintiff's Request for Review, it nevertheless concluded that there was no basis for changing the ALJ's decision and denied Plaintiff's request. Tr. 3-4. The ALJ's decision, therefore, became the final decision of the Commissioner.

On November 9, 2004, Plaintiff commenced this action which seeks judicial review of the Commissioner's decision that Plaintiff was not disabled.

## II.   STANDARD OF REVIEW

An individual may obtain a review of the final decision of the Commissioner by a United States District Court. 42 U.S.C. § 405(g). The court's review of a denial of disability benefits is limited to determining whether the decision is supported by substantial evidence and whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002)(citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). The court

will not re-weigh the evidence, try the questions *de novo*, or substitute its judgment for the Commissioner's, even if the court believes that the evidence weighs against the Commissioner's decision. *Masterson,* 309 F.3d at 272. "[C]onflicts in the evidence are for the Commissioner and not the courts to resolve." *Id.* (quoting *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir. 2000)).

In order to qualify for disability insurance benefits or supplemental security income, a claimant has the burden of proving that he or she has a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. Substantial gainful activity is defined as work activity involving significant physical or mental abilities for pay or profit. *Newton,* 209 F.3d at 452; *see* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1527(a)(1).

The Commissioner follows a five-step process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. § 404.1520; *Masterson*, 309 F.3d at 271; *Newton*, 209 F.3d at 453. In this case, the ALJ found at step 4 that Plaintiff was not disabled subsequent to June 12, 2001, because Plaintiff could return to her past relevant work as a Chinese linguist. Tr. 20.

## III.   DISCUSSION

Plaintiff claims that the ALJ's determination that she could return to her past relevant work subsequent to June 12, 2001, was erroneous because his finding was contradicted by Plaintiff's testimony and was not supported by substantial evidence in the record and because it was based on the erroneous assumption that she had returned to work as a library technician in mid-2001.

Plaintiff argues that the ALJ's determination that she experienced medical improvement related to her ability to perform work subsequent to June 12, 2001, was in error. The ultimate issue is whether the ALJ's decision is supported by substantial evidence. The court, therefore, must

review the record to determine whether it "yields such evidence as would allow a reasonable mind to accept the conclusion reached by the ALJ." *Loza v. Apfel,* 219 F.3d 378, 393 (5th Cir. 2000).

Where a claimant is found entitled to disability benefits, that claimant's continued entitlement to such benefits must be reviewed periodically. *See* 20 C.F.R. §§ 404.1494, 416.994. The Commissioner must determine if there has been any medical improvement in the claimant's impairment(s) and, if so, whether this medical improvement is related to the ability to work. *Id.* If medical improvement related to the claimant's ability to work has occurred, the Commissioner must also show that the claimant is able to engage in substantial gainful activity before finding the claimant is no longer disabled. *Id.* In this matter, the ALJ found that Plaintiff was entitled to a closed period of disability from March 24, 2000, through June 12, 2001. Tr. 20. The ALJ further found that Plaintiff had experienced medical improvement related to her ability to work subsequent to June 12, 2001. Tr. 19.

Plaintiff argues that this finding is erroneous in several respects. She argues that: the ALJ erred in finding that she had returned to her work as a library technician in mid-2001; there is no evidence to demonstrate that she experienced medical improvement after June 12, 2001; she does not have past relevant work as a Chinese linguist, but only has training in this area; she has not been able to maintain a level of fluency in Chinese necessary to remain employable in this field and that the ALJ bears the burden of showing that this job is available in sufficient numbers so as to allow the reasonable acquisition of such employment; she does not have the residual functional capacity to perform this job because of her hand cramping, her neck problems, her inability to use her left arm very much, and her upper back pain; and the ALJ erred in making his credibility determination.

A.    **Whether the ALJ erred in finding that Plaintiff had experienced medical improvement subsequent to June 12, 2001.**

Plaintiff asserts several claims of error related to the ALJ's finding that she experienced medical improvement subsequent to June 12, 2001, and was thus not disabled.  Medical improvement is defined as "any decrease in the medical severity" of the claimant's impairments. 20 C.F.R. § 404.1594(b)(1).  Medical improvement must be based on the "symptoms, signs, and/or laboratory findings associated with the claimant's impairments.  *Id*.  If there is a decrease in medical severity as shown by the symptoms, signs and laboratory findings, the Commissioner must then determine if the improvement is related to the claimant's ability to do work. 20 C.F.R. § 404.1594(c)(1).  In determining whether medical improvement is related to the claimant's ability to do work, the Commissioner assesses the claimant's residual functional capacity and compares it to the residual functional capacity at the time of the most recent favorable medical decision.  *Id*.

Plaintiff first argues that the ALJ erred in finding that she had returned to her past work as a library technician in mid–2001.  The record demonstrates that the ALJ indeed erroneously noted in his opinion that Plaintiff returned to work as a library technician in mid-2001.  Tr. 15.

As Defendant correctly notes, "procedural perfection in administrative proceedings is not required."  *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988).   The court will not reverse the decision of an ALJ for lack of substantial evidence where the claimant makes no showing that she was prejudiced by the deficiencies she alleges.  *Carey v. Apfel*, 230 F.3d 131, 143 (5th Cir. 2000)(citing *Brock v. Chater*, 84 F.3d 726, 729 (5th Cir. 1996)). Procedural improprieties will constitute a basis for remand "only if such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision." *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988).  Plaintiff must thus demonstrate prejudice arising from the alleged error to be entitled to

relief. *Hall v. Schweiker*, 660 F.2d 116, 119  (5th Cir. 1981)(*per curiam*).  The court, therefore, considers whether such error was prejudicial.

Although the ALJ made this erroneous statement, he nevertheless found that Plaintiff *had not* engaged in substantial gainful activity since March 24, 2000. Tr. 15.   The ALJ correctly noted that Plaintiff had returned to work as a part-time choir director in October 2000.  *Id*.  In making his credibility determination, the ALJ made no reference to Plaintiff working as a library technician in 2001.  Tr. 17.  In fact, he discussed Plaintiff's part-time work as a church choir director.  *Id*.  This is, of course, consistent with Plaintiff's own testimony.  Tr. 32.  Plaintiff testified that she worked part-time as a choir director for Sunday services and during choir practices, being paid by the occurrence, and working 3.5 to 4.5 hours per week.  *Id.*  Plaintiff testified that she began work as a choir director sometime in October 2000.  Tr. 36.  The ALJ did not rely upon the erroneous statement that Plaintiff worked as a library technician in 2001 in making his credibility determination.  I find that this error was not prejudicial and does not provide a basis for remand.

Plaintiff also argues that the ALJ otherwise erred in making his credibility determination. She notes that although he stated that Plaintiff  was "a year into her college graduate degree by mid-2001," she had in fact testified that she had started working on her masters degree in 1998 and "the accident in '99 put an end to that." Tr. 32.  While the ALJ's statement regarding Plaintiff's graduate school work is at odds with her testimony, the ALJ's credibility determination deals primarily with Plaintiff's part-time work as a choir director given her alleged limitations involving her neck, shoulders, and upper extremities; her reports and testimony concerning her activities; and her reliance primarily upon conservative treatment modalities.  Tr. 18.  The record clearly demonstrates that the ALJ did not rely exclusively or even primarily upon the erroneous statements identified by Plaintiff in making his credibility determination, having extensively discussed Plaintiff's medical records and testimony in his opinion.  I also find that this error is not prejudicial.

The record supports the ALJ's discussion of Plaintiff's activities which he relied upon in making his credibility determination.  Dr. Vansickle noted Plaintiff's report of caring for her children, driving her car, exercising, shopping, and riding her bike.  Tr. 321.  Plaintiff also reported that she is able to prepare meals and shop for groceries.  Tr. 321-22.   It is appropriate to consider the claimant's daily activities when deciding the claimant's disability status.  *Leggett v. Chater*, 67 F.3d 558, 565 (5th Cir. 1995).  Questions of credibility are the responsibility of the ALJ to resolve.  *Masterson*, 309 F.3d at 272.   Moreover, although Plaintiff takes exception to the ALJ's consideration of her motor vehicle accident claims and worker's compensation claim, the ALJ may appropriately consider any possible secondary gain and motivation for seeking disability benefits.  *See, e.g., Gaddis v. Chater*, 76 F.3d 893, 895-96 (8th Cir. 1996).

Plaintiff argues that the evidence of record does not demonstrate that she experienced medical improvement subsequent to June 12, 2001.

Dr. Wilkinson, Plaintiff's treating specialist, indicated in his progress note dated March 28, 2001, that Plaintiff was doing well in general, although she still had pain with heavy or repetitive forward flexion or abduction. Tr. 360.  He indicated that Plaintiff could advance with her current rehab at her own pace and planned on a follow-up appointment in 2.5 to 3 months.  *Id*.  Dr. Wilkinson issued Plaintiff a prescription indicating that she should "continue off work status pending" her next appointment in June 2001. Tr. 359.  In his progress note dated June 12, 2002, Dr. Wilkinson indicated that Plaintiff, in general, was "doing well." Tr. 353.  He noted that Plaintiff's range of motion was surprisingly good and that she was "doing almost normal activity."  *Id*.  He indicated that Plaintiff should be "a little bit careful about overuse" and that she should continue on her current exercise protocol.  *Id*.  He also indicated that Plaintiff should follow-up in four to five months, and if she was still doing well, he would probably discharge her from his care.  *Id*.  Dr.

Leckie indicated in a progress note dated July 11, 2001, that Plaintiff should walk 10 to 15 minutes a day.  Tr. 352.

The record further indicates that Plaintiff was referred for physical therapy by Dr. Duarte, a treating neurosurgeon,  in June 2001.  Tr. 407.  She underwent a physical therapy assessment on July 3l, 2001.  Tr. 405-06.  The physical therapist ("PT") indicated upon manual muscle testing that Plaintiff had some decreased strength in her shoulders, but otherwise her upper extremity strength was within normal limits.  Tr. 405.  The PT also indicated that Plaintiff's upper extremity range of motion was within functional limits and that cervical range of motion was minimally decreased.  *Id.*

Dr. Duarte examined Plaintiff on June 22, 2001.  Tr. 415.  He noted that upon examination Plaintiff was "completely normal" and indicated that Plaintiff "is to work on a full-time basis without restrictions."  He opined that Plaintiff should increase her activities as tolerated.  *Id.*  Dr. Duarte again saw Plaintiff on December 28, 2001.  Tr. 415.  He noted upon examination that there was no clear cut weakness of the upper or lower extremities and her reflexes were symmetric. *Id.*

Plaintiff notes that Dr. Wilkinson did not indicate on June 12, 2001, or on any other date, that she had achieved a level of post-surgical recovery which would permit her to return to work. However, the record clearly demonstrates that Dr. Duarte, one of Plaintiff's treating specialists, specifically opined that Plaintiff should increase her activities as tolerated and is "to work on a full-time basis without restrictions."  Tr. 415.  Dr. Wilkinson had earlier prescribed that Plaintiff remain "off work status" upon seeing Plaintiff in January 2001 and March 2001, but he made no such prescription upon seeing her in June 2001. *See* Tr. 359 (indicating that Plaintiff should continue off work until appointment in June), 361 (indicating that Plaintiff should continue off work from January 2, 2001, until next appointment on March 14, 2001). The findings of the June 14, 2001, MRI of the lumbar spine indicated diffuse degenerative changes that are mild and are worse at L5-S1. Tr. 351.  Dr. Wilkinson's own progress notes indicate that Plaintiff was doing well and doing

-11-

"almost normal activity." Tr. 353.   In a letter to Dr. Leckie dated June 4, 2002, Dr. Duarte noted that at that point, Plaintiff had tried all conservative treatments and must either live with the pain or consider having surgery.  Tr. 411.

The opinion of a treating physician who is familiar with the claimant's impairments, treatments, and responses should be accorded great weight in determining disability. A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2).  On the other hand,  "[g]ood cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Newton*, 209 F.3d at 456.

While Plaintiff correctly notes that Dr. Wilkinson did not specifically release her to work on June 12, 2001, the medical record is consistent with the ALJ's finding of medical improvement subsequent to that date.  "The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record." *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991)(citing *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987)). The task of weighing the evidence is the province of the ALJ. *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001). The relative weight to be given these pieces of evidence is within the ALJ's discretion.  *Id.*  Here, the ALJ appropriately considered the records of various treatment providers as well as Plaintiff's testimony about her activities.  Plaintiff testified that Dr. Wilkinson advised her not to engage in activities which require lifting and using the upper extremities.  Tr. 34-35.  Plaintiff also testified that she *had not* discussed her work with Dr. Wilkinson and further indicated that if he had advised her not to accept the part-time choir director work, she still would

not have turned it down. Tr. 35.   The ALJ noted in his opinion that the Plaintiff's decision to seek out and engage in work which necessarily required consistent repetitive use of at least one upper extremity and which also involved neck and upper body use and movement was inconsistent with Plaintiff's allegations of serious symptoms and functional limitations with regard to her neck, shoulders, and upper extremities. Tr. 18. The ALJ appropriately considered this inconsistency in making his credibility determination.

Even if Dr. Wilkinson had indicated that Plaintiff was disabled or unable to work, such a statement would not be entitled to special weight. "Among the opinions by treating doctors that have no special significance are determinations that an applicant is 'disabled' or 'unable to work.' These determinations are legal conclusions that the regulation describes as 'reserved to the Commissioner.'"   *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003)(citing 20 C.F.R. § 404.1527(e)(1)).

Plaintiff argues that the ALJ erred in making his credibility determination by stating that Plaintiff alleged a disability onset date of October 12, 1999.  The Disability Report - Field Office indicated an alleged onset date of October 12, 1999.  Tr. 80.  The Disability Report - Adult more clearly indicated that Plaintiff's illnesses, injuries, or conditions first bothered her on October 12, 1999, and caused her to be unable to work on March 24, 2000.  Tr. 85.  The ALJ found that Plaintiff's testimony concerning her condition was not credible *to the extent that she alleged the inability to engage in any work activity* between October 12, 1999, and March 23, 2000, and subsequent to June 12, 2001.  Tr. 16 (emphasis supplied).  This is consistent with the Disability Report - Field Office and partially inconsistent with the Disability Report - Adult that Plaintiff completed.  The ALJ appropriately considered the date which Plaintiff identified as the time when Plaintiff's injuries first bothered her.  Tr. 85.  He also appropriately considered whether Plaintiff's work after that date constituted substantial gainful activity.  *See* 20 C.F.R. § 404.1527(a)(1); 20

-13-

C.F.R. §416.972 (a)(1)(contrasting unsuccessful work attempt with substantial gainful activity).

Although Plaintiff may have intended to allege a disability onset date of March 24, 2000, rather than

October 12, 1999, this disparity had no material effect on the ALJ's decision and was therefore not

prejudicial.

Plaintiff also argues that the ALJ erred in finding that she retained the residual physical

capacity to perform a limited range of light work.    Plaintiff argues that the RFC determination was

completely fabricated by the ALJ and does not reflect any of her physician's opinions, nor does it

accurately reflect her abilities.  The ALJ ultimately found that subsequent to June 12, 2001, Plaintiff

regained the functional capacity to perform the exertional and nonexertional requirements of light

work, limited to jobs which require no lifting over 10 pounds, no overhead use of the upper

extremities, and no work with weight with the arms extended.  Tr. 18.  Plaintiff testified that Dr.

Wilkinson had advised her not to engage in activities which would require her to reach overhead or

to extend her arms when weighted.  Tr. 34.  In a letter dated October 2, 2000, Dr. Wilkinson

indicated that, at that time, anything that required forward pressure, lifting, or repetitive use of the

shoulder in a forward position might exacerbate her symptoms. Tr. 365. On July 30, 2001, Plaintiff's

PT noted that Plaintiff had some decreased strength in her shoulders, but otherwise her upper

extremity strength was within normal limits and her upper extremity range of motion was within

functional limits, with minimally decreased cervical motion.  Tr. 405.  Another PT noted on

November 27, 2001, that Plaintiff had engaged in a home exercise and aquatic exercise program,

her strength had improved with her ability to perform all exercises in 45 minutes while increasing

the number of repetitions performed, and she was discharged from physical therapy, having reached

the established goals with maximum functional return.  Tr. 437.

The VE testified that Plaintiff's part-time work as a choir director is skilled work at the light

exertional level.  Tr. 40.  The VE further testified that Plaintiff's previous work as a library

technician is classified as light, skilled work but was performed by Plaintiff at the medium exertional level. *Id*. A vocational expert is called to testify because of his familiarity with job requirements and working conditions. *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995) (citing *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir.1986)). "The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed." *Id.* In testifying, a vocational expert "is able to compare all the unique requirements of a specified job with the particular ailments a claimant suffers in order to reach a reasoned conclusion whether the claimant can perform the specific job." *Fields*, 805 F.2d at 1170. The ALJ therefore appropriately relied upon the testimony of the VE in determining the exertional requirements of Plaintiff's work as a choir director, as well as her past relevant work as a Chinese linguist.

It is, of course, the ALJ's responsibility to determine a claimant's RFC, and such an assessment is not a medical opinion. *See* 20 C.F.R. §§ 416.946, 416.927(e). The ALJ is not required to incorporate any specific limitations into his RFC assessment simply because it appears in a medical opinion. Rather, the ALJ has the sole responsibility for weighing the evidence, may choose whichever physician's diagnosis is most supported by the record, and may incorporate into the RFC assessment the limitations supported by that diagnosis or diagnoses. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991). In any case, the ALJ's RFC assessment was consistent with Plaintiff's testimony as to the limitations imposed by Dr. Wilkinson and with her reported activities and part-time work as a choir director. The ALJ appropriately exercised his responsibility as factfinder in weighing the evidence and in choosing to incorporate limitations into his RFC assessment that were most supported by the record. *Muse*, 925 F.2d at 790. The task of weighing the evidence is the province of the ALJ. *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001). The ALJ also has

the responsibility to resolve questions of credibility and questions arising from conflicting medical opinions. *Masterson*, 309 F.3d at 272. The relative weight to be given these pieces of evidence is within the ALJ's discretion. *Id.* I find that the ALJ did not err in making his RFC assessment, and his RFC finding is supported by substantial evidence in the record. I further find that the ALJ did not err in accepting Dr. Duarte's statement that Plaintiff could return to work full-time with no restrictions. I also find that the ALJ did not err in finding that Plaintiff experienced medical improvement subsequent to June 12, 2001.

**B.     Whether the ALJ erred in finding at step 4 that Plaintiff could return to her past relevant work.**

Plaintiff argues that the ALJ erred in finding at step 4 that she could return to her past relevant work as a Chinese linguist in several respects. First, Plaintiff argues that she has only training rather than actual work as a Chinese linguist. In her reply, Plaintiff notes that she was trained as a Chinese linguist while on active duty with the Marine Corps Reserves. She indicated that she became deactivated following the completion of her training because there were no Marine Corps Reserve Centers available for her to complete weekend drills. She argues that this period as a reservist on active duty training does not constitute "work."

Substantial gainful activity is defined as work activity involving significant physical or mental abilities for pay or profit. *Newton,* 209 F.3d at 452; *see* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1527(a)(1). "Work" is covered under Social Security for those on active duty for training as a member of a uniformed service, including those who are a members of a reserve component. 20 C.F.R. § 404.1019(a). Sections 404.1565(a) and 416.965(a) provide that a claimant's work experience is relevant when "it was done within the last 15 years, lasted long enough for [the claimant] to learn to do it, and was substantial gainful activity." 20 C.F.R. §§ 404.1565(a),

416.965(a).  Plaintiff's work as a Chinese linguist constituted work at the level of substantial gainful activity which was relevant as defined by the regulations (i.e., it was "past relevant work"). Plaintiff's allegation that her training as a Chinese linguist while serving as a Marine Corps reservist who was temporarily activated did not constitute "work" as defined in the appropriate regulations is without merit.

Plaintiff further argues that the ALJ erred at step 4 in finding that she can perform her past relevant work because she alleges that she has not been able to maintain an appropriate level of fluency in the Chinese language to be employable nor has the ALJ demonstrated that she would reasonably be able to obtain such work.

If the claimant is found able to perform her past relevant work at step 4 of the sequential evaluation process, the Commissioner will find that she is not disabled.  20 C.F.R. §§ 404.1520, 416.920.  The regulations do not require that the Commissioner demonstrate that such jobs exist in significant numbers in the regional or national economy when a claimant is found not to be disabled at step 4 rather than at step 5. *Leggett v. Chater*, 67 F.3d 558, 565 (5th Cir. 1995)(citing  20 C.F.R. §§ 404.1560(b) and 404.1560(c)).

The Social Security Act provides that a claimant "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other  kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A). The regulations of the Social Security Administration ("SSA") interpret the statute to mean that a claimant can be found not disabled where she remains able to do her previous work at step 4 of the evaluation process, without investigating whether that work exists in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520. Although subsequent to the

date of the ALJ's decision, the Supreme Court held in *Barnhart v. Thomas,* 540 U. S. 20, 29-30 (2003), that the SSA's interpretation of the statute is reasonable and that § 423(d)(2)(A) does not unambiguously require a different interpretation.[2]   Thus, the SSA is authorized to determine pursuant to its regulations that a claimant is not disabled where she is able to do her past relevant work, without showing that the claimant's past relevant work exists in significant numbers in the national economy.

The regulations also indicate when past work is relevant (i.e., done within the last 15 years, lasted long enough for claimant to learn to do it, and was substantial gainful activity).  *See* 20 C.F.R. §§ 404.1565(a); 416.965(a).  Plaintiff indicated that she concluded her training as a Chinese linguist in March 1988.  Pl. Brief at 5.  She provided a copy of her DD-214 form, indicating that she entered active duty service during this period on October 10, 1987, and completed her service on March 1, 1988, spending approximately 4 months, 22 days on active duty.  Pl. Brief Ex. A.  Plaintiff's earnings records demonstrate that this was performed at the level of substantial gainful activity.  Tr. 69.  The regulations do not require that the ALJ otherwise demonstrate that the claimant has maintained the skills gained doing her past relevant work.  Therefore, Plaintiff's argument that the ALJ failed to show that she remains "employable" in her past relevant work as a Chinese linguist, or that such jobs are reasonably available to her is without merit.  Applicable regulations provide that a determination that she can perform her past relevant work will result in a finding of "not disabled."  20 C.F.R. §§ 404.1520, 416.920.  The ALJ was not required to demonstrate that her past

---

[2]      The SSA essentially does not interpret the clause "which exists in the national economy" in 42 U.S.C. § 423(d)(2)(A) as applying to "previous work."  Therefore, a finding that the claimant retains the ability to perform her past relevant work at step four can result in a determination of no disability without inquiry into whether the claimant's previous work exists in the national economy. Although effective after the date of the ALJ's decision, this interpretation was also recently more fully explained in Social Security Ruling 05-01c (February 15, 2005).

relevant work exists in significant numbers in the regional or national economy, nor was he required to show that she could obtain such work; and his finding that Plaintiff could return to her past relevant work as a Chinese linguist was not in error. Moreover, at step 4 the Plaintiff bore the burden to demonstrate that she cannot perform her past relevant work.

Plaintiff also argues that she cannot perform the job of Chinese linguist in the manner that she was trained to do because the demands of writing and typing causes cramping in her arms and hands. Pl. Reply at 12. She also argues that she cannot perform this job because of her neck problems, her inability to sit at a desk for extended periods, and her inability to make more than light use of her right arm, either by writing or reaching forward. *Id.* The ALJ incorporated limitations on lifting more than 10 pounds, overhead use of the upper extremities, and working with weight while the arms are extended into his RFC finding. Tr. 18.

Plaintiff argues that she has additional limitations which preclude work as a Chinese linguist. However, these additional limitations were not incorporated into the RFC finding, which I have already found as supported by substantial evidence in the record. To establish a prima facie case of disability, Plaintiff had to show that she could no longer perform her former work. *Hollis v. Bowen*, 837 F.2d 1378, 1386 (5th Cir. 1988). The mere inability of the Plaintiff to perform certain requirements of her past job does not mean that she is unable to perform her past relevant work. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). To the extent that Plaintiff argues that she cannot perform the job of Chinese linguist in the manner in which she was told it would be performed while she was in the service, the ALJ may rely upon the testimony of the VE to determine the requirements of either the specific job a claimant performed or the same kind of work as it is customarily performed throughout the economy. *See* Social Security Ruling 82-62 (August 20, 1980). The record indicates that the ALJ did not improperly rely upon the testimony of the VE in

finding that Plaintiff could perform her past relevant work. *See Bowling v. Shalala*, 36 F.3d 431,

435-36. Moreover, Plaintiff bears the burden of proof at step 4 of the sequential evaluation process.

*Masterson*, 309 F.3d at 272. Plaintiff's allegations fail to demonstrate that she is unable to perform

her past relevant work.

I find that the ALJ did not err in finding at step 4 that Plaintiff retained the RFC to perform

her past relevant work as a Chinese linguist. He appropriately relied upon the testimony of the VE

in determining the requirements of Plaintiff's past relevant work, and such testimony constituted

substantial evidence in support of the step 4 finding. He also appropriately found that Plaintiff's

past training as a Chinese linguist constituted past relevant work as defined by the applicable

regulations. Finally, the ALJ was not required to demonstrate that Plaintiff had maintained the skills

necessary to obtain such work, nor was he required to demonstrate that Plaintiff could reasonably

obtain work as a Chinese linguist in making his step 4 finding. The ALJ's decision is supported by

substantial evidence in the record.

## IV.    CONCLUSION

Based upon the foregoing discussion of the issues, the evidence, and the law, this court

recommends that the United States District Judge affirm the Commissioner's decision and dismiss

the Plaintiff's complaint with prejudice.

The United States District Clerk shall serve a true copy of these findings, conclusions, and

recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1) and

Rule 4 of Miscellaneous Order No. 6, For the Northern District of Texas, any party who desires to

object to these findings, conclusions, and recommendation must serve and file written objections

within 11 days after being served with a copy. A party filing objections must specifically identify

those findings, conclusions, or recommendation to which objections are being made. The District

Court need not consider frivolous, conclusory, or general objections.  A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court.  *See Thomas v. Arn*, 474 U.S. 140, 150, 106 S. Ct. 466, 472 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within 11 days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the United States Magistrate Judge that are accepted by the District Court, except upon grounds of plain error.  *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

DATED this 6th day of March, 2006.

**PHILIP R. LANE**
**UNITED STATES MAGISTRATE JUDGE**